May it please the Court, Jason Zero on behalf of Appellants. This suit calls for nothing more than a straightforward application of settled legal principles. Ex parte Young authorizes prospective relief against state officials to remedy ongoing violations of federal law. That is exactly what this suit seeks. It is a suit to enforce the Federal Readmission Act in which Congress set a floor, a federal floor for education in Mississippi. Congress chose as the content of that floor a previously existing and democratically adopted state law. When you say it's just a straightforward case, there's always a room for first, but there's never been a readmission act litigation that's been successful ever, correct? No, there has not. Appellees analogize this case to cases under Enabling Acts, and there have been successful Enabling Act cases. I'd be happy to address the three Readmission Act cases very briefly because I think none of them is persuasive. The first which sort of originated this case law is Butler. That's the 1951 three-district court panel decision from Virginia, and that was a case under Virginia's— I don't want to consume your time with that case. You don't have to defend what other courts have done, but their argument hovers around several things. One is that the text of the Readmission Act is specific to amendments that occurred in this case 50-plus years ago, the one that deleted the uniformity. And then they say also the structure of the Readmission Act is this is Congress readmitting states. This isn't for court litigation. I think your answer to the latter one is that hasn't been reached, the political question, all that. But the first one is squarely presented. Exactly. I'm about to address the first question about the text of the Readmission Act. One point on Butler is Butler does illustrate that this case is not going to open the floodgates, for example, to Federal court litigation because the rights at issue in most of the Readmission Acts are already bolstered by Federal law. So Butler was a case— But this would be constitutionalizing a Federal education right in Virginia, Texas, and Louisiana. Your Honor— All of a sudden the Federal Constitution— Right? It would not be constitutional. It would be a statutory right federally to uniform education across those three states. That would be pretty seismic. And you meant Mississippi, didn't you? Well, I meant Virginia and Texas, right? Right, right. What did I say? Louisiana was the third? Okay, I apologize. So, yes. This is— It would be that. That would be seismic. It would—it is a limited request with respect to education. It's very important. I agree. And this is something that Congress chose. So it's not constitutionalizing anything. It's enforcing a statute that Congress wrote. With respect to the text of the Readmission Act in particular, I am unaware of any case other than Seminole Tribe, which is a different issue, in which the text of a Federal guarantee somehow takes the case outside the ambit of Ex parte Young. And I think this Court's— A little slower. Sorry. I'm sorry. Say that again. I'm unaware of any case in which the text of the Federal guarantee takes the case outside the ambit of Ex parte Young. And in fact, this Court's decision in Lipscomb—that's a 2001 case—rejects that analysis. So Lipscomb is a case under the Contracts Clause, and the Contracts Clause says no state shall pass any law impairing the obligation of contracts. The law in question—so pass no law is just like the opening clause of the Readmission Act. The law in that case, in Lipscomb, was the 1890 Mississippi Constitution. That was obviously passed in 1890. And no one suggested that it wasn't enforceable under Ex parte Young simply because the law was passed in 1890. But rather, what mattered for this Court in Lipscomb is that there was state action pursuant to an invalid state law. And you can see that really across the gamut of Federal guarantees. Your proposition is that 201, set against the Readmission Act, is invalid. Correct. That's current 201 and state action pursuant to current 201. My reading—we'll see what opposing counsel says—is that Papasan does divide up claims. It does. And therefore, ones where your complaint says there's an ongoing present injury, those would be cognizable. That's exactly right. That's your position. But then the more difficult view—admittedly, in my view, the District Court gave us very little to assess with—but the more difficult Supreme Court case is Pennhurst. And in that regard, why aren't we saying, okay, District Judge, you've got jurisdiction to assess whether it violates Federal law, but you can't say things—jots and jiggles like uniformity are Federal law. Those aren't anywhere in the Readmission Act. Right. So I think you can think of the Readmission Act—it sets a Federal floor for education in Mississippi. You can think of it like a specific reference statute, and you see those across the Federal statutes. Congress all the time chooses to incorporate some other body of Federal law as the Federal floor. That's the word you're using, but they don't incorporate things like uniformity or number of days per year, right? That's where they say this is more like Hess, and what's the other case? Hess and Bragg, and I'd be happy to address those. What Congress chose to protect here is the school rights and privileges in the Mississippi Constitution. One of those school rights and privileges was the uniformity guarantee. Coming back to Pennhurst, however— How do we know that? The Readmission Act says the Constitution shall not be amended, shall never be amended or changed to deprive any citizen or class of citizens of the school rights and privileges secured by the Constitution of said state. But you aren't arguing that Mississippi couldn't improve on that Constitution? Absolutely not. It is a floor. Congress chose the school rights and privileges then existing, then democratically adopted by the state of Mississippi as the floor. Of course Mississippi could exceed the floor, could provide substantively better education. This is just a floor, and Congress happened to choose the content of a previously existing state law. With respect to Pennhurst, it's important, I think, to consider the facts of Pennhurst. Pennhurst was a state law claim against state officials alleging that the state officers failed to comply with the state statute. There was no federal law in the picture whatsoever, and in fact, the case was under the Court's pendant jurisdiction. So what you have there is a case, a claim that could just as easily have been brought in state court, and an allegation that state officials were acting ultra-virus state authority. Again, take the federal law out of the picture, the claim is exactly the same. That's not this case. Yeah, but Pennhurst has been expanded in the cases that I mentioned. Hess and Bragg. And I'd be happy to address them. Those are the ones that seem different. Right. I think this Court's decision in Cox rejects Apelli's reading of Hess and Bragg. What you see in Hess and Bragg is federal law sets a federal floor, then you have a What's the full caption of Cox? Is that the Everett case, or is that? I don't have it with me, but I can get it for you on rebuttal. It's a, Cox is a case under the RCRA, the Resource Conservation and Recovery Act. It's out of Texas. I will get that for you. But in Hess and Bragg, what you have is a federal statute setting the floor, minimum federal standards, then you have a state statute adopted to comply with the federal standards. And federal money. And to get federal money. Spending clause legislation, of course, so that makes it distinguishable to begin with. But then you have state action that fails to comply with the state law, right? So you're on the state-state level. There's no, the federal law is sort of out of the picture in that case. But the federal law, whatever verb you want to use, incorporated, federalized state law to the point it becomes federal law. That's your argument as to what's here, too, no? No, that's not our argument. In Hess and in Bragg, the state law, everyone agreed that the state law was fine. There was no problem. The state law didn't conflict with federal law. It was just state officials weren't enforcing the state law. And I think you can actually see it very clearly in the Hess case, where the state of Pennsylvania adopted a bonding requirement that the state officials were alleged not to have complied with that went well beyond anything in the federal statute. What you see in Cox, by contrast, is a federal standard, then you have a state plan adopted pursuant to the federal standard, and the allegation was not that the state officials were failing to comply with the state plan, but that the state plan itself failed to comply with federal law. And that's analogous to what we have here. We have a state law that doesn't comply with federal law, rather than state officials failing to comply with state law. And so if you put Cox and you put Lipscomb together, they answer completely the two arguments that appellates have advanced on sovereign immunity. Turning back to the text of the Readmission Act, there are many other federal guarantees with similar language that I suppose purport to operate directly on state law, and no one would suggest that there's a sovereign immunity question. You can think of the First Amendment, Congress shall make no law respecting etc., etc. No one suggests that a law that was passed in 1890 or 1910 is unenforceable, can't be brought into court by virtue of sovereign immunity, simply because it's old. The First Amendment, even though it's phrased like that, you can bring a case in federal court because what matters for sovereign immunity is state action pursuant to an invalid state statute. You see that also in preemption cases. ADA preemption, state shall enact or adopt no law that conflicts with the federal statute. You see this essentially as a preemption case. It is very similar to a preemption case. It's similar to any other case in which Congress sets a federal floor and the state doesn't comply with the federal floor. The only wrinkle in this case is that Congress chose as the content of that federal floor a previously existing state law. There's no case at all suggesting that's problematic for sovereign immunity purposes. And I would submit the reason is, is because it's more respectful of state sovereignty. Congress chose what Mississippi itself had democratically adopted rather than impose an external obligation on the state of Mississippi. And that was a choice that's respectful of the state's sovereignty. It's the law the state adopted. Well, what if you prevail, this goes back to which district judge? Southern District of Mississippi. I think Judge Barber, who had the case before, may have retired and has stopped taking cases. I'm not entirely sure about the procedure, but it would go back to the Southern District. Wouldn't that judge then be obligated to just give content to the word uniformity? That's a state law, state constitutional law term from over a century ago doesn't exist. Right. So that sounds like a Pennhurst problem. Two points in response. The first is, it is an everyday function of federal courts to interpret state law when applying federal guarantees. You can think about the takings clause or the due process clause. Any federal guarantee that talks about property, what's the property at issue? It's a state law property. Right. You have to look at state law. Let's say he could, you've gotten around Pennhurst, it goes back to the district judge. Right. Can, you had a second declaration you're requesting, would it actually bind officials today? Right. Absolutely. And that is what the readmission act requires. I see the two declarations as flip sides of the same coin. If section 201 is unenforceable to the extent it conflicts. That all turns on your use of the word in your brief. One is the converse of the other. But you also emphatically say the guarantee, the uniformity guarantee is not state law. And that's still difficult for me to call. Whether or not it's state law. Say it's not state law in the brief. Correct. Whether or not it's state law, there's no Pennhurst problem. I think the way to read the statutes is what matters is what Congress understood the school rights and privileges in the Mississippi constitution to be in 1870 when it passed the readmission act. And that's just an ordinary specific reference canon case. The Supreme Court decided one just last term in jam. But you, it refers to the school rights and privileges and the only question is what did Congress understand those school rights and privileges to be? Had you sued in 1960, your argument would be they're trying to create a segregated school system in response to Brown, right? And that would be a very timely immediate conflict. One might think Congress wouldn't have let Mississippi back in if that was their purpose. So two points in response. One is my clients weren't alive in 1960 so they couldn't have brought this. That would have been the timely argument which would have had a lot of traction. Second is there's no suggestion whatsoever in the text of the readmission act and the rejectment from Congress is the remedy. There's no text whatsoever that says if Mississippi violates the readmission act then it's ejected. So Congress way back in 1868 thought federal courts would be litigating this instead of Congress deciding itself, yes? So let me give you a slight twist. Congress hadn't adopted section 1983 in 1870. It came in 1871, expanded so it would go to state court. Congress passed 1983 in 1871, expanded it per the revisers in 1874 to include and laws. And appellees have advanced this argument that the timing is problematic for us. It's not. The Supreme Court in Jett said section 1983 was passed in order to make previously existing federal guarantees federally enforceable in federal court. And that's exactly what we're doing. Returning, however, to the question of whether or not Congress would have intended, I think the answer has to be yes. This is the private right of action analysis and I'll say that has to come last because it's non-jurisdictional unlike the other arguments. But if you look at the plain text of the statute, and again the text is what matters, it talks about school rights and privileges. So what matters is what Congress understood those school rights and privileges to be. Appellees have advanced the argument that it would be difficult to determine what uniformity means. But I think this court would just apply the ordinary tools of statutory construction, dictionaries, contemporaneous cases, house debates or floor debates to the extent relevant, law review articles, any decisions relevant that Congress might have considered at the time. So standing and private right of action would be secondary, but political question would be just as presently available to resolve this. And your brief invitation is if we are even thinking about that, you'd like an opportunity to brief it? Absolutely. If the court has questions, I mean, of course I would be happy to answer them today. I'm ready to answer them. We would appreciate the opportunity to brief it more if the court is concerned. I think all of those are hard issues, but in this case the answers are easy. I mean, a straightforward application of settled doctrine resolves the political question doctrine in our favor in this case. The first case obviously would be Zivotofsky. I think there's no such thing as a political question in the context of a statute. But if there was a remand, couldn't the district court take those questions up? Oh, absolutely. On remand. And if the case — I see my time is up. May I finish? You may. If the case was decided adversely, I think we would be right back here. But I think the case law is fairly clear on all four issues, and therefore we respectfully ask the court to reverse. Thank you. Thank you. May it please the court. Chrissy Noble for all of the state officials in their official capacity. Just quickly, what you said at the last point. There's no case where political question doctrine has been used to say a federal court can't interpret a federal statute. Do you have a case? Count 6 of Pacific States actually was a statute. And actually, their best case, El Shifa, the majority opinion, actually rejected that. What they cite is a concurrence. And actually, in Texas v. United States, this court actually rejected a Guarantee Clause claim that was brought not only under the Guarantee Clause, but also under Texas' articles of annexation. And actually, just if I can just go to that point, it actually really doesn't make sense. Zivotofsky didn't say that. But political question, as Your Honor mentioned, is actually Article III jurisdiction. And I think it's a pretty common principle that statutes can't expand Article III jurisdiction, which is what the majority in El Shifa actually said. But you can see that across the board, for example, in footnote 3 of Reins v. Byrd. So I think that's actually wrong. I think Nixon, how Nixon put it, is right. And that's that court's quote, determine the extent, whether in the extent of the issue, whether or not that's committed to a coordinate political branch. And Nixon actually talked about the second factor of Baker as well, and that's lack of judicially discoverable and manageable standards. I would have thought this would be, again, the dis—well, let me start. First question is, you aren't defending some—there isn't much reasoning given to us by the district court, but you aren't defending whole portions of it, like the declaratory relief request is not equitable, correct? Let me just say this about the district court opinion in light of that question. I think it started right and it ended right. And with respect to the district court, I would have done the details a little bit differently. With the declaration part, the district court did not exactly say this. But the way I read it is what Justice Rehnquist said on page 73 of Green v. Mansour. And that's about declarations and not being able to use them to get around the Eleventh Amendment. In fact, Justice Rehnquist called it a, quote, partial in run around the Eleventh Amendment. So I'm not defending— So if it's retrospective relief you're asking for, it's still prohibited? And that gets you into the argument about whether this is time-barred or not? The retrospective relief is, if the actual alleged violation of Federal law actually is the fact that Mississippi held a new constitutional convention in 1890, that's past—that's past relief. That's Edelman. Retrospective relief can't prevent past violations of Federal law involving conduct already completed. And that seemed to me the middle of the district court opinion mostly. But it's overlooking quite a bit of their complaint allegations that we have a present ongoing severe problem in Mississippi's public education system caused by the fact that uniformity was taken out in 1960. So again, I got by the Papasan predicament and moved right to Pennhurst. Was that wise for me to do or is that a mistake? I think that they are both—I think that there are really three problems here. Edelman, yes, which I think Your Honor just said you got by. That's retrospective relief. That's barred. Then you get to Pennhurst, which I'm going to go directly to. But I do think that there is the third problem that Justice Rehnquist talked about in Green v. Mansoor. And I agree, the district court did not put it in those terms, but that is the net effect of what the district court was saying about the declaratory relief. And so if I can just go straight to Pennhurst or even start back to say plaintiffs say that this is just a usual thing that the Federal courts do all the time. This is quite literally something the Federal courts have never done in 150 years. And that's where we're starting from. And so I also want to start with what the actual standard is for this. I guess they'd say, though, until 1960, Mississippi acknowledged its obligations. But in 1960, when the legislature decided to take out an obligation to schoolchildren that education will be uniform to all, that that's when the harm was inflicted. Actually, so two points about that. One, I just want to make sure I'm on the same page with the court, that since 1960, the Constitution has been amended again. So it was amended in 1987. Well, you have you have I focus on one that's about 30 years old. Mississippi says, you know, we'd like to have unbridled discretion as to school proceedings that that are I would think looks quite inconsistent with the floor that a century and a half ago, Mississippi was obligated to guarantee to get back into the union. So that that has its own difficulty. But 50 plus years ago, Mississippi, specifically in the wake of Brown, didn't like uniformity. So they knock that out and then they get more in whatever it is. Eighty seven. They want unbridled discretion. So it seems to me they've come to federal court and said, you know what, put two or one up against the Readmission Act, which guarantees the protection to school rights and privileges. And they've deleted the critical privilege we needed. And they've added discretion to get rid of anything. That's the argument. Actually, it's put to a to a one up against the 1868 Constitution, both of which are state law. I agree. In 1960, the Constitution was changed, but then it was changed again. So that would have to be viewed as a past as a past retrospective relief type of a claim. But there is a second equal protection claim in Pakistan that says if the ancient harm is today, you can still consider it. No problem with with sovereign immunity. Yes. And now we're independent. Hearst and they are independent. Now we are. And I want to say it's problematic that Congress put 1868 into federal law. Actually, the text of the text of the Readmission Act is important, and I want to make sure I get back to Pennhurst. But the text of the Readmission Act is basically don't amend your state law to take away rights created by state law. So it didn't set a federal floor. It set a state floor. And I am not saying that Congress cannot do that. Right. The 11th Amendment doesn't prohibit Congress from doing that. What if Congress had said, don't amend your constitution to take out your uniformity guarantee? Two points, then I think, one, you would have the Constitution has been amended. So that would be the past act. And then, too, if Congress was creating a new right to a uniformity clause, it could have said that. Right. We could have the idea with spending clause legislation, which I also want to address. But it didn't. It said, don't change your law to violate a right created by your law. So in 1860, we commanded. Right. You had to have a convention. And as I read it, I mean, this is really simple history. I may be wrong, but we have slaves that are now free citizens and they need three things. They need to be able to be elected themselves. They need to be able to vote and they need to be able to be educated in order to do the first two political rights. And then federal law steps in and no one disputes it and federalizes the command of states about office holding and voting. But we didn't get Congress stepping in about education. And that's this litigation. Mississippi, according to the claimants, has depleted below even a document that existed 150 years ago, the rights to that uniform education and that undercuts the political rights. That's the argument. And as your honor put it, the uniformity clause isn't in federal law. What federal law puts you back to is state law. And I want to be very clear. I'm not saying that this is a federal law that doesn't have a federal remedy. It does. It is a federal law and it is such a unique and extraordinary federal law that that federal remedy is for Congress. And when Congress invokes that federal remedy, it does not violate the 11th Amendment, because the 11th Amendment is that the judicial power shall not be so extrude. OK, that's a good argument. OK, I'm sorry. What would Congress's remedy be to eject Mississippi's representatives or. Yes, exactly what it was in 1869, because in 1869. Well, let me start back in 1868. Georgia was readmitted to representation in Congress. Then Georgia tragically expelled from its General Assembly African-American legislators. And the remedy was not court. The remedy was that Congress again barred Georgia's representatives from holding seats. That is a remedy that will never violate the 11th Amendment, because that is a remedy that doesn't implicate the 11th Amendment. But that does not mean that private plaintiffs can come to federal court and enforce what is state law, school rights and privileges. And I want to make this one point about Pennhurst, because plaintiffs keep saying it's pendent jurisdiction. The issue is pendent jurisdiction. But if you look at page 121 of Pennhurst in its holding, the court recaps what it's actually saying there. And the quote is this, quote, neither pendent jurisdiction nor any other basis of jurisdiction may override the 11th Amendment. So you really do have to look at this 11th Amendment standard. And you're looking at two things. Jump then. I mean, you're both very, very prepared. He relied on the Cox case especially. I had seen in the briefings our Ibarra decision and the Third Circuit Everett decision. Those begin to move towards if the Congress incorporates state law, then it becomes federal law and there's no Pennhurst problem. That may be he'll in a rebuttal tell me if that's wrong. But what do you think about those three cases in particular, Ibarra, Everett and Cox? I think that they actually show why this is barred by the 11th Amendment. And here's why. So Cox is RCRA, Everett and Ibarra are both suspending clause legislations, but they're both the cooperative state and federal programs. So in those instances, you have a federal law with federal requirements and they actually by nature have to be specific. Otherwise, you're going to violate Pennhurst 1 and the clear statement rule. So this is our federal law. You have to have a state law in exchange for federal money that mirrors it. So I agree. Cox was a state spending law? Cox was RCRA, but in RCRA, the state and the federal plan mirrored. So if you look at the end of part one of Ibarra, the court actually says that state law was verbatim federal law. So you got this specific federal law right here. State law mirrors it. Now, I do agree. That means that if you violate federal law, you're violating state law, violate state law, you're violating federal law because they are exact same. But when you come to federal court, what you're enforcing, it's this very specific federal criteria. Here we have a state constitution and yes, we have congressional representative representation statute. But why wouldn't the district judge then just have to interpret the phrase school rights and privileges? Because Mississippi could still violate that express federal language. The school rights and privileges in 1868 were state law, school rights and privileges. So here's the difference between Ibarra is that you have federal criteria, specific federal criteria in spending clause legislation. That's what that looks like. Here we have the 1890 Mississippi constitution. The only thing that plaintiffs have put up to mirror the 1890 constitution is the 1868 constitution. And think about spending clause this way too, because spending clause itself is very rarely privately enforceable. If you come to federal court, for example, chief judge Durden has an opinion, it's hope versus Bryant, and it's not cited in the brief, but I'm just now thinking about it and it's title four D of the social security act, which we know from blessing isn't privately enforceable. So if it's not privately enforceable under spending clause legislation, the federal law, you don't get to stay in federal court and enforce the state law, even though it mirrors the federal court. That's a private right of action. We, no one's reached that here, whether blessing applies. I mean, we're talking about Mississippi citizens. The one could argue that that's an unambiguous. That's exactly right. But in spending clause legislation, you have specific federal criteria. You have federal law saying this is your right, not Mississippi. Don't change your state law in a way that violates your state law. In 1868, they were school rights and privileges, and today they're school rights and privileges. And when you put in a declaration state, you have to comply with the 1868 state constitution. That is a very serious Pennhurst problem. And in fact, if that's not barred by Pennhurst, then it wouldn't be barred by Pennhurst for this court to tell state, this court to tell the state that you are then violating that. If the first, if declaring state law to state officials isn't barred by Pennhurst, telling state officials later that they violated it. What if he has jurisdiction just to say to the state, you have to adhere to the Readmission Act language, period? Why wouldn't he have jurisdiction to make that statement? Well, the Readmission Act language says state don't violate your state law. And so if the federal court just said, don't violate the Readmission Act, that would basically be an advisory opinion. State don't violate Title VII. Now, you've got to say why. And that's what Papasan tells you. If you look on page 279 of Papasan, it tells the court that you have to look at the substance of the relief. VOPA echoes that. And it says that courts are required to, quote, look to, quote, the effect of the Readmission Act litigation. But why isn't this almost the same as Spending Act legislation? Congress says you're going to get a lot of federal money if you do the following. But you get to describe what the following is. But if you violate that, you're in federal court. Here, Congress said, it's not money, but you get representatives in Congress if you do the following. What you would be saying is that by readmitting 10 states to representation in Congress, Congress federalized the portions of 10 states' constitutions, so much so that plaintiffs can come to federal court and ask a federal court to tell the state how its state constitution must read in perpetuity and that state officials must conform their conduct to it. Well, I think, I don't know, I mean, that's well put, but it doesn't, that doesn't sound so appalling to me. That's maybe because I'm a federal judge. In other words, if Congress says states, here are three specific rights, no one's disputing right to office hold, no one's disputing the right to vote. There's this third that's been neglected. It is a state law, right? And that is Pennhurst. And again, Congress can enforce that all they want, but even... Did the district court elaborate any of this articulate argument you're making? I am doing it now. You are? We appreciate it. It's just, we're facing a very consequential ruling from a district court that cites a case, but does nothing with it. It looked to me, again, the briefs are helpful. There's an, what was the earlier readmission act litigation in Mississippi? Uh, A-1. 1995. Yes. Looked to me, the court just said, that looks good to me. Boom. Yes. Yes. Um, but this, this is classic. I do think Pennhurst, you have to look at the declaration and it's state law. Scholars, what are scholars, you probably have looked at, are scholars talking about any of, is it, would we find any relevant scholarship to help us decide this case? Uh, on Pennhurst, I'm not sure because Butler was decided prior to Pennhurst, but I will say the three judge panel on Butler, it was some, summarily affirmed by the Supreme court. Now it's been aggravate, abrogated in part by Harper, but only in part and not as to the readmission act part and summary affirmances, those are, those are binding to the questions presented and questions one and two that went up to the Supreme court were the remission, readmission act and the court and Butler said, that's the exclusive domain of Congress and it was only abrogated in part, which is why you see the, the merit court in Arkansas reciting, citing it later and there are three other grounds. And just because he rested a huge amount of weight on Cox. Tell me again to specific to Cox, because it sounds like you're, you're able to do this. I think Cox is RCRA. So Cox is the same way. You've got a federal law and you've got a state law and they mirror each other. And so when you come to federal court, you're looking at that federal law here, you're never going to be looking at federal law. Think about what the analysis would be. It would be four steps. You've got to first determine what state law school rights and privileges were determined or provided in 1868. Then you got to determine what state law school rights and privileges are today. Then you've got to mix the two together and determine which state law provides better or greater school rights and privileges under state law. And then you're declaring to state officials that they have to conform their conduct to a version of state law that the federal court says is how state, state law should be. That's, that's Pennhurst. You're never turning back to federal criteria. In spending clause and due process in RCRA, you always are. And the way spending clause gets around some of these Pennhurst problems is by a waiver like you have in the IDEA. And you do not have that here. And there are three other grounds for affirmance here. They were briefed by all parties in the lower court. And the second one I have, just because it does go hand in hand a little bit with the private right of enforceability, is the lack of, or goes hand in hand with the 11th amendment, is the lack of private right of enforceability. And this actually textually fails Gonzaga, I think for the simplest of reasons. We have pending before us an en banc case that's asking us to apply blessing and. Yes, Phillips. And I don't even think that you get there here. This actually fails it for a very simple reason. And I think I can actually say it in three sentences. Plaintiffs claim that they have a private right to a uniformity clause in a state constitution's education proviso. Two problems. Problem one, nowhere in any federal statute, let alone the readmission act, is there a mention of a uniformity clause? So there is no way this court could say that that statute manifests an unambiguous congressional intent to create such a right. Problem two, even if you surveyed the federal court, 1868 state law, school rights and privileges from 150 years ago, how is the federal court supposed to pick and choose from state law what school rights and privileges Congress meant yet never actually said are to be privately enforceable? What do you want and the uniformity guarantee to have met? I do not know because it's for the Mississippi Supreme Court. Well, I know, I know. But I'm asking you when you have an opinion on it, it would strike me that it might have answered a lot of the disparities that are described in such detail in the complaint. I mean, I guess let me say that two ways. For the private right, picking and choosing a loan from a federal statute is going to collide with Gonzaga. Picking and choosing from state law 150 years ago, you're doubly problematic under Gonzaga. But especially when you look at the state law — Well, why in 1960 did there was — is there any history that's relevant as to why they felt they needed to remove the requirement of uniformity in their constitution? I think that was Democratic citizens in 1960.  Right. But that is — But it seems like maybe the consequences have continued to today. Well, let me maybe put it back into the consequences of 1868. You had a guarantee — this is in footnote 25 — you had a guarantee — this is under the uniformity clause — you had a guarantee only of four months of schooling. That's it. Four months. And then, back then, the schools were quite tragically segregated schools. That's where we're going back to if we go back to 1868. Well, they say it's a floor, but good for Mississippi every time they improve. But you can't go backwards. Well, that's a pretty bad floor to start with. But second of all, how do you pick school rights and privileges as federal rights that Congress never said? That is easily — see, I'm running out of time, if I may briefly conclude. That easily fails Gonzaga. This is in the exclusive domain of Congress. And this is Edelman, Penhurst, and page 73 of Green v. Mansoor. And any one of those grounds for — of decisions can affirm the district court. Thank you, counsel. Rebuttal. Thank you. I have a good bit to say on private rights of action, but I'm going to address the issues that pertain to sovereign immunity first. There was a suggestion that this case would somehow be seismic. It would not. I think, as Judge Higginson observed, the first two rights in the Readmission Act are already enforceable. People get into court for their political rights, right to vote. This is just a third right that's in a federal statute. But then doesn't that fit into her argument that Congress could better step up to the plate and do it with education as well? No, on the contrary. And the reason is because there's no text in the statute that suggests that the remedy is congressional enforcement. If you look at Seminole Tribe, and that's the private — that's the sovereign immunity analysis, you need an express congressional scheme to displace Section 1983 as the remedy. Section 1983 provides a default remedy unless there's express text that says, here's an alternative enforcement — But we know — her point is, we know what they did with Georgia. Georgia didn't violate its Readmission Act. So it wasn't Congress enforcing the original Georgia Readmission Act. So you can't infer, therefore, that a Mississippi — When Georgia said no blacks can hold office, that wasn't a violation? I do not believe that. You can go back and look. I've looked at the Georgia Readmission Act. That was not a violation of the Georgia Readmission Act. I'm not — I'm not great with originalism and going back. It's hard for me to know what people meant along — My understanding is it was not. Moreover, four years later, Congress passed Section 1983, which default provides a remedy. And the only way to displace the 1983 remedy is with clear language, and there's no such clear language in the statute. Jump to Pennhurst. That's the thrust of her argument. She cites Butler and spending clause legislation — I mean, cases — Right. So Butler is not a sovereign immunity case. It says nothing about Pennhurst. It was decided in 1950 — it's a political question doctrine case, and that case did not hold that the political question doctrine barred the claim. It was dicta, and it was dicta 12 years before Baker v. Carr settled the political question analysis and 50 years, a half-century, before Zivotofsky. On top of that, Butler obviously has been overruled by the 24th Amendment and Harper v. Virginia. But I think you can see that it doesn't align with the modern political question doctrine jurisprudence because it undertakes no textual analysis whatsoever. It just assumes that the remedy is congressional — — in the spending clause legislation, that it's got to mirror one to the other. Congress has got to do it exactingly. They can't make a broad reference to state constitutional law a century and a half ago and ask federal courts to conclude that. That would conflict, for example, with the specific reference canon. I mean, it would conflict quite plainly with what Congress is permitted to do, which is reference another body of law. Congress is allowed to do that. The jam case in the Supreme Court last term says you can have a specific reference and incorporate another provision of law, including state law, which is incorporated by Congress all of the time. All of the time, Congress says, we're going to choose a state standard and we're going to apply that as a federal floor. With respect to the spending clause, I don't think it makes particularly much of a difference whether it's spending clause legislation, legislation under the 14th Amendment. What matters for Pennhurst is Pennhurst applies only when you have an allegation of state officials acting ultra-virus state authority. That's not what we have in this case. Appellees are saying that Mississippi is not bound by a federal statute at all. That is a conflict between state law and federal law, and it's just a routine matter in federal courts that when state law conflicts with federal law, you can bring a federal claim under Section 1983 to enforce the federal right unless Congress displaces the federal right with express language. That's the Seminole Tribe case in the sovereign immunity context, and it's Gonzaga footnote four in the private rights of action analysis, and in fact, Your Honor's opinion in the Stokes case. If you have express language saying alternative remedy, then of course Congress can display Section 1983. But unless Congress does so, Section 1983 provides the remedy, and it provides the remedy here. Coming back to the Pennhurst question, if you take the Readmission Act out of the picture in this case, we have no claim. This is obviously a claim to vindicate the supreme authority of federal law, and that's what Ex parte Young says. When you have a suit to vindicate supreme federal authority, you can go to federal court to seek a declaration or an injunction. If you take the Readmission Act out of the picture in this case, we have nothing because state law currently does not comply with the Readmission Act. This is the Readmission Act applies, state law notwithstanding. On the question of timing, had the plaintiffs, for example, in Romer waited 25 years, there would be no timing problem. Had the plaintiffs in Obergefell waited 50 years, there would be no timing problem. And I see my time is about up, if there are no more questions. All right. Thank you, counsel. Thank you. We will take this matter under advisement. This concludes the cases on our floor.